# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:16-cv-00018-MR

| | |
|---|---|
| CHRISTI LYNN KIRK,       )<br>                          )<br>    Plaintiff,         )<br>                          )<br>    vs.                   )<br>                          )<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>                          )<br>    Defendant.            )<br>_____) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment. [Doc. 12]. As more fully explained below, the Court will grant the Plaintiff's motion and remand this matter.

**I.   BACKGROUND**

Plaintiff asserts that her severe depression, major anxiety, and certain other mood disorders constitute severe mental impairments under the Social Security Act rendering her disabled. [Doc. 8-4 at 2 (Transcript ("T.") at 86)]. On February 20, 2012, the Plaintiff filed an application for a period of disability and disability insurance benefits, alleging an onset date of June 2, 2009 (later amended to January 15, 2012). [Doc. 8-3 at 67 (T. at 66)]. The

Plaintiff's claim was denied initially on May 17, 2012 [Doc. 8-4 at 2 to 19 (T. at 86 to 103)], and upon reconsideration on September 5, 2012. [Id. at 21 to 39 (T. at 105 to 123)]. At the Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") in Charlotte, North Carolina, on June 12, 2014. [Doc. 8-3 at 64 to 86 (T. at 63 to 85)]. The Plaintiff appeared with counsel. Also present were Kathryn H. Mooney, the Vocational Expert ("VE"), and Annette Gilbert, the Plaintiff's sister. [Id.]. On August 22, 2014, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 25 to 35 (T. at 24 to 34)]. The Appeals Council denied the Plaintiff's request for review on November 24, 2015, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 2 to 4 (T. at 1 to 3)]. The Plaintiff, having exhausted all available administrative remedies, filed her action in this Court. This case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to

uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). "In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). The claimant "bears the burden of proving that he is disabled within the meaning of the Social Security Act." English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520; 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. 20 C.F.R. §§ 404.1520; 416.920. If not, the case progresses to the second step where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies or a combination thereof which significantly limit the claimant's ability to perform

work activities, then no severe impairment is established and the claimant is not disabled. Id. Third, if a severe impairment is shown and meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. Fourth, if the severe impairment does not meet any of the Listings, then the ALJ determines the claimant's residual functional capacity ("RFC") and reviews the physical and mental demands of work done in the past. If the claimant can still perform his/her prior work despite the severe impairment, then a finding of not disabled is mandated. Id. If the claimant has a severe impairment but cannot perform past relevant work, then the case progresses to the fifth step where the burden shifts to the Commissioner.

At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work that exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006) (noting Commissioner bears evidentiary burden at step five). The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines ("Grids") found at 20 C.F.R. § 404, Appendix 2 to Subpart P, if applicable, or by calling a VE to testify. 20 C.F.R. § 404.1566. If the Commissioner

succeeds in shouldering her burden at step five, the claimant is not disabled. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

**IV. THE ALJ'S DECISION**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged amended onset date. At step two the ALJ found, as relevant here, that Plaintiff suffers from generalized anxiety disorder, major depression, dependent personality disorder, mood disorder, and attention deficit disorder, all severe mental impairments. [Doc. 8-3 at 27 (T. at 26)]. At step three, the ALJ found that Plaintiff's impairments did not meet or equal one of the Listings. [Id.].

At step four, the ALJ made his determination with regard to the Plaintiff's RFC and concluded that:

> the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except, the claimant retained the mental capacity to perform simple, repetitive, routine tasks, where there was no contact with the public, in a non-production environment, with a set routine.

[Id. at 29 (T. at 28)]. As noted, the ALJ's medium work RFC determination was restricted. He concluded Plaintiff could not perform the full range of medium work, in part, because she was limited to performing simple tasks, in a non-public setting, that did not require firm production quotas. The ALJ

6

identified Plaintiff's past relevant work as a legal assistant, an office manager, and a receptionist. [Id. at 34 (T. at 33)]. The ALJ observed, however, that "[s]ince claimant is only able to perform at the unskilled level, she would not be able to engage in past work." [Id.]. Accordingly, the ALJ concluded the Plaintiff was unable to perform past relevant work. [Id.].

With the Plaintiff having carried her burden through the first four steps, the ALJ then assessed whether, at step five, the Commissioner could meet her burden of showing the availability of jobs the Plaintiff is able to do, given her RFC. [Id.]. Based upon the testimony of the VE, the ALJ concluded that, considering the Plaintiff's age, education, work experience, and RFC, there were other jobs existing in the local and/or national economy that she was able to perform, including day worker, laundry labeler, and copy machine operator. [Id.]. The ALJ therefore concluded that the Plaintiff was "not disabled" and denied benefits. [Id.].

## V. DISCUSSION

The parties in this matter have filed cross motions for summary judgment. The Plaintiff presents two arguments as to why the decision of the ALJ should be reversed. First, Plaintiff asserts that the ALJ erred by failing to follow the correct legal standard in arriving at Plaintiff's RFC determination. [Doc. 11 at 4]. In particular, the Plaintiff asserts the ALJ neglected to

undertake a function-by-function analysis when employing the "special technique," mandated for evaluating mental impairments, which resulted in an RFC that failed to account for all of Plaintiff's mental health-related limitations. [Id. at 5 to 12]. Second, Plaintiff asserts that the ALJ erred by failing to follow the correct legal standard when evaluating the opinion of Plaintiff's treating psychiatrist, Dr. Isabella Eustice. Specifically, Plaintiff contends the ALJ erred in assigning "little weight" to Dr. Eustice's opinion. [Id. at 13]. Plaintiff asserts further the ALJ's error in this regard was exacerbated when the ALJ thereafter relied upon his own untrained lay interpretation of the Plaintiff's treatment record when drawing conclusions about Plaintiff's symptoms. [Id. 14 to 16].

The Plaintiff argues that the ALJ's procedural errors render the RFC determination infirm, and the ALJ's decision to deny Plaintiff benefits must, therefore, be reversed. [Id. at 18 to 19]. The Defendant, on the other hand, simply asserts that the ALJ's determinations regarding Plaintiff's RFC and the weight to be accorded the opinion of Plaintiff's psychiatrist were supported by substantial evidence. [Doc. 13 at 4; 12]. Having considered the arguments raised by both parties, the Court concludes that the ALJ failed to apply the correct legal standards at two different steps in the sequential process. Specifically, the ALJ erred at step 4 when determining the Plaintiff's

mental RFC and at step 5 when considering the medical source opinions of record.

    A.  **The RFC Determination.**

Residual Functional Capacity is an administrative assessment of "the most" a claimant can still do despite her limitations. SSR 96-8p; 20 C.F.R. §§ 404.1545(c); 416.945(c). In assessing a claimant's RFC and thus her ability to work, the ALJ must evaluate all of the claimant's medically determinable mental impairments, together with symptoms, "based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1).

In determining a claimant's RFC, in which symptom analysis is an integral component, the ALJ must first identify the claimant's functional limitations or restrictions and then assess the claimant's work-related abilities on a *function-by-function basis*. SSR 96-8p (emphasis added). The Ruling explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). … Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

As explained in SSR 85-15, "[s]ince mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings." Accordingly, determining whether these individuals will be able to adapt to stress in the workplace is often extremely difficult.

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirement of even so-called "low stress" jobs.

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job, for example, a busboy need only clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demand of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the knowledge that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerated for some mentally impaired persons. **Any impairment-related limitations created**

**by an individual's response to demands of work, however, must be reflected in the RFC assessment**.

Id. (emphasis added).

The ALJ's bare-bones RFC assessment in this matter is legally insufficient. Pertinent here, 20 C.F.R. § 404.1520a(a) requires ALJs, when evaluating the severity of mental impairments, to employ a "special technique" in the process of reviewing a claimant's limitations. ALJs must consider "all relevant and available clinical signs and laboratory findings, the effects of [ ] symptoms, and how [ ] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment. Id., § 404.1520a(c)(1). The ALJ's written decision, purporting to make use of the "special technique" in this matter, indicates that such an exercise was purely perfunctory:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[Doc. 8-3 at 29 (T. at 28)].

11

As can be seen, the ALJ's decision contains no function-by-function analysis of Plaintiff's mental health limitations and work-related abilities prior to expressing his RFC assessment. While the ALJ's decision rotely recites that his mental RFC determination "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis[,]" the record discloses no employment of the "special technique" at all. Unlike the state agency evaluators conducting Plaintiff's Initial Disability Determination and the Reconsideration Disability Determination, the ALJ failed to explicitly consider Plaintiff's ability to:

    carry out detailed instructions;

    maintain attention and concentration for extended periods;

    perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

    complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

    interact appropriately with the general public;

    accept instructions and respond appropriately to criticism from supervisors;

    get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

    respond appropriately to changes in the work setting;

> travel in unfamiliar place or use public transportation; and
>
> set realistic goals or make plans independently of others.

[Doc. 8-4 at 14 to 15; 33 to 35 (T. 98 to 99; 117 to 119)]. Given that the ALJ failed to consider the Plaintiff's ability to perform any of the foregoing functions, the ALJ necessarily failed to evaluate the Plaintiff's capability of staying on task when performing any such functions. Finally, the ALJ failed to consider or determine how Plaintiff's mental health limitations could be affected by her medications or other treatment while in the workplace. For these reasons, this matter will be returned to the ALJ so that he may comply with the proper procedure for assessing the Plaintiff's severe mental impairments *before*[1] expressing an RFC determination at step 4. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (holding that ALJ's failure to conduct a function-by-function analysis provides basis for remand).

Upon remand, it will be critical that the ALJ carefully perform a function-by-function analysis of the Plaintiff's mental limitations and work abilities, and

---

[1] The Fourth Circuit has made it clear that an ALJ's RFC determination should follow the ALJ's function-by-function analysis: "We have explained that expressing the RFC before analyzing the claimant's limitations function by function creates the danger that the adjudicator will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir 2016) (internal citation and formatting omitted).

thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). The necessity of a narrative discussion describing how the evidence supports each conclusion, as required by SSR 96-8p, is paramount and should include an explanation of "which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

### B.   Evaluation of Opinion Evidence.

Plaintiff's second assertion of error surrounds her contention that the ALJ failed to follow the correct legal standard when evaluating the opinion of Dr. Isabella Eustice, her treating psychiatrist. [Doc. 11 at 5]. Specifically, Plaintiff contends the ALJ erred in assigning "little weight" to Dr. Eustice's opinion. [Id. at 13]. No claimant's case can be decided in reliance on any medical opinion without some determination by the ALJ that such medical opinion is supported by substantial evidence and is not inconsistent with the claimant's symptoms, the clinical signs, and the laboratory findings in the record. SSR 96-2p. Apart from assigning "little weight" to Dr. Eustice's opinion, the ALJ failed to assign any recognizable degree of weight to any of the other medical opinions in the record. Because the ALJ failed to make any determinations that the medical source opinions below may or may not

be supported by substantial evidence, this matter must be remanded to the ALJ for him to make such determinations in the first instance.

In making disability determinations, the regulations require ALJs to consider all medical opinions of record. 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). Further, regardless of the source of the medical opinion, the ALJ must evaluate and weigh every medical opinion in the record. Id., § 404.1527(b) & (c). In considering the various medical opinions, the regulations identify certain criteria to guide ALJs when assigning weight to such opinions. Generally speaking, more weight will be given to an opinion of a medical source who has examined the claimant than to a non-examining source. Id., § 404.1527(c). Further, more weight will generally be given to opinions from a claimant's treating sources than from sources rendering an opinion based upon a single or limited examination of a claimant. Id. In this way, the regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the claimant become weaker. Accordingly, more weight will be given to treating sources

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the

> medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

Id., § 404.1527(c)(2).

In this matter, there were medical opinions rendered by five sources regarding the Plaintiff's mental impairments. Sharon J. Skoll, Ph.D., a non-examining state agency evaluator, rendered an opinion on the "special technique" components necessary to determine Plaintiff's mental RFC at the Initial Disability Determination stage. [Doc. 8-4 at 13 (T. at 97)]. William H. Farrell, Ph.D., a non-examining state agency evaluator, rendered an opinion on the "special technique" components necessary to determine Plaintiff's mental RFC at the Reconsideration Disability Determination stage. [Id. at 35 (T. at 119)]. John H. Bevis, M.A., LPA, and Michael F. Fiore, Ph.D., rendered an opinion about the Plaintiff's mental impairments based upon a single, consultative examination. [Doc. 8-8 at 45 to 48 (T. at 284 to 287)]. Finally, Dr. Eustice, Plaintiff's treating psychiatrist, submitted an opinion summarizing the Plaintiff's mental impairments and related symptoms. [Doc. 8-9 at 56 (T. at 388)]. This opinion became a part of the record following the Plaintiff's disability hearing. Near the conclusion of the hearing the ALJ requested the Plaintiff's counsel to procure such report. [Doc. 8-3 at 82 (T. at 81)].

The ALJ's written decision acknowledged the five listed medical sources with varying degrees of specificity. Ironically, the ALJ discussed Dr. Eustice's clinical notes and findings with the greatest degree of detail but assigned "little weight" to her opinion. [Doc. 8-3 at 32 (T. at 31)]. The ALJ discussed the opinion of the consultative examiners, Mr. Bevis and Dr. Fiore, but failed to assign weight to their opinion. [Id. at 31 to 32 (T. at 30 to 31)]. Finally, the ALJ "considered the administrative findings of fact made by the State agency's non-examining … psychological consultants" and assigned to their opinions the meaningless value of "evidentiary weight." [Id. at 33 (T. at 32)].

The upshot of this analysis is that the ALJ accorded no opinion in the Plaintiff's record "persuasive weight," "great weight," "greatest weight," or "controlling weight" such that it would support his mental RFC determination. The only meaningful description of the weight to be given any opinion was the ALJ's determination that Dr. Eustice's opinion would be given "little weight, because it does not explain claimant's mental limitations." [Id. at 32 (T. at 31)]. As such, neither that opinion nor any other opinion in the record was considered by the ALJ to be of sufficient weight to support his assessment of the Plaintiff's mental RFC. "The RFC assessment must always ***consider and address*** medical source opinions. If the RFC

assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, (emphasis added). As a result of this failure to properly evaluate the opinion of Dr. Eustice, as well as all of the other medical source opinion evidence, the ALJ arrived upon a mental RFC that was not supported by substantial evidence. This failure to weigh and evaluate the most significant evidence regarding Plaintiff's mental impairments – medical source opinions – requires remand.

## **O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **GRANTED**, and that the Defendant's Motion for Summary Judgment [Doc. 12] is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**  Signed: March 13, 2017

Martin Reidinger
United States District Judge